UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Michael Kane</u>

   v.                                    Civil No. 16-cv-123-LM
                                          Opinion No. 2017 DNH 030
<u>Town of New Ipswich, et al.</u>


O R D E R

Michael Kane moves for reconsideration of the court's order granting defendants' motion to dismiss his amended complaint (doc. no. 66).  In support, Kane contends that the court's order is "manifestly wrong and in error" because the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, does not apply to his claims and because he states cognizable constitutional claims.  Defendants object to the motion for reconsideration.

Standard of Review

"The granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks and citation omitted).  To succeed, a party moving for reconsideration must show a "manifest error of law or newly discovered evidence" or that the court "has patently misunderstood a party." Ruiz Rivera v. Pfizer Pharms., LLC, 521

F.3d 76, 82 (1st Cir. 2008).  A motion for reconsideration
cannot be used, however, to advance arguments that could or
should have been raised before judgment was entered.  United
States v. Zimny, --- F.3d ---, 2017 WL 344976, at *7 (1st Cir.
Jan. 24, 2017).

Background

In his initial complaint (doc. no. 1), Kane alleged that
his property located in New Ipswich, New Hampshire, was a
"household utensil" which was exempt from property tax pursuant
to RSA 80:9.  Defendants moved to dismiss the complaint as
barred by the TIA.  The court granted the motion to dismiss but
allowed Kane an opportunity to file an amended complaint "to
state claims arising out of the events alleged in this case that
do not challenge the validity of the New Ipswich tax assessment
and collection process, if any such claims exist."  Doc. no. 50
at 10.

Kane filed a fifty-seven page amended complaint in which he
brought fifteen civil rights claims pursuant to 42 U.S.C. §§
1983, 1985, and 1986 (doc. no. 51).  In the amended complaint,
Kane alleges that defendants violated his Fourteenth Amendment
rights and retaliated against him in violation of his First
Amendment right to free speech by failing to adequately answer

his questions about his property taxes and respond to his protests that the imposition of property taxes was a violation of his constitutional rights.  Kane found that the responses provided to him and defendants' failure to provide responses were "extremely insulting, unprofessional and an intentional slap in the face."  Doc. no. 51 at ¶ 56.

Kane alleges that the town's attorney's letters to him to explain the taxes assessed and to explain that he had not sought information under the "Right to Know" law were "outrageous" and "served no purpose other than to outrage me by insisting that the amount [of taxes] demanded by the Town, which I repeatedly and lengthily claimed to be fraud, was an 'amount due.'"  Id. at ¶ 64.  Kane alleges that the chairman of the town's board of selectmen, who is a defendant, hired the attorney and "directed him to blow me off, rather than answer my questions, in retaliation for my past exercises of First Amendment free speech challenging his authority and implying he had no authority over me."  Id. at ¶ 76.  Kane states that "[i]rrespective of the validity of the tax that was collected by the Town of New Ipswich, the conduct of the Town and its attorney regarding my questions, by responding with snarky word games and/or failing to respond at all to my serious concerns, was unjust,

3

discourteous, and shocking to the conscience" in violation of his Fourteenth Amendment rights.[1]   Id. at ¶ 67.

Kane alleges that members of the board of assessors were aware of his protests in opposition to property taxes and his challenges to the validity of those taxes.  He contends that those defendants violated his Fourteenth and First Amendment rights by failing to respond to his tax protests and challenges. He alleges that he suffered emotional anguish because his protests were ignored, which chilled his efforts due to a feeling of powerlessness.  He also alleges that defendants conspired to retaliate against his First Amendment rights by hiring an attorney and by failing to properly respond to his protests.

Kane brings a separate claim against Jessica Olson based on her notice to him of an impending tax deed and his interaction with her on August 26, 2015, the deadline provided in the notice.  Kane alleges that the notice of an impending tax deed was intended to "snub and outrage me, which it did."  Id. at ¶ 122.  Kane sent a letter about the notice but did not receive a

---

[1] Neither the town nor the town's attorney is a defendant in this suit.  Although Count III refers to the town, Kane did not list the town as a defendant in the complaint and states that all claims are brought against the individual defendants personally.

response, "again slapping me in the face by ignoring my beliefs of my rights being violated." Id. at ¶ 123.

On the deadline for paying his property taxes, August 26, 2015, Kane appeared at the tax collector's window in the town office.  Olson asked if she could help him, which upset Kane because she did not acknowledge that she knew him, despite all of his protest letters.  Kane called his payment an extortion fee, rather than payment of property taxes due.  Olson disagreed with his explanation.  Kane insisted on a receipt before he tendered the money, and began to toss bundles of money on the counter.

Olson said that she felt threatened.  Unbeknownst to Kane, Olson called the police who responded and were present in the office while Kane completed payment of his taxes.  Kane noticed the police officers after he left the counter.  Because Kane appeared to be calm, no further interaction with the police occurred.

Kane alleges, nevertheless, that Olson attempted to "cause [the police] to kill or otherwise injure me, or to remove me from the town office" and "prevent me from paying my taxes so she could use the statutory tax deed process to take my shelter and extinguish my family." Id. at ¶ 136.   Kane alleges additional claims of constitutional violations and conspiracy

based on his theory that defendants violated his rights by
instigating the incident with Olson and by ignoring his tax
protests.

For relief, Kane states that he requires the eight
individual defendants, whom he alleges are town officials
involved in tax assessment and collection, "be immediately
removed and/or prohibited from holding any and all government
employment or offices, Federal, State, and Local, now and in the
future."  Id. at 51 of 57.   He also demands compensatory
damages of one million dollars from each of the defendants and
an additional 10 million dollars from Jessica Olson, whom he
alleges is the town clerk and tax collector.[2]

The court granted defendants' motion to dismiss the amended
complaint on the grounds that the claims were barred by the TIA
and that Kane failed to state any actionable civil rights
claims.  See doc. no. 66.

## Discussion

In support of his motion for reconsideration, Kane argues
that the court improperly applied the TIA to bar his claims and
that "[t]he facts and evidence currently within the record of
this case do prove my claims when properly noticed, interpreted,

_____

[2] Kane also seeks 40 million dollars from the town.

6

and construed."[3]  Doc. no. 68 at 2.  Kane contends that the court misunderstood his factual allegations.  Defendants object to the motion, arguing that the court properly decided that Kane's requested relief of removing defendants from their town offices would disrupt the town's tax collection process and that Kane did not identify a constitutional right requiring defendants to respond to his tax protests in a particular way.

A.  TIA Bar

Kane contends that the Supreme Court narrowed the scope of the TIA in Direct Marketing Ass'n v. Brohl, 135 S. Ct. 1124 (2015), so that the court erred in concluding that his claims were barred by the TIA because of the relief he was seeking.  In Direct Marketing, the plaintiff challenged a Colorado law that required retailers who did not collect state use taxes to notify their customers of their "use-tax liability" and to report that tax information to the customers and the state.[4]  135 S. Ct. at 1127.  The Court noted that the TIA applies to the assessment,

---

[3] Kane further states that "[t]his court's order has shocked me so greatly that 12 days after, I still can barely compose myself and my thoughts enough to address this Court's errors of my facts."  Doc. no. 68 at 2.  He asserts that the order has caused him emotional distress of the same kind that defendants have caused.

[4] Use taxes are "the equivalent of sales taxes for out-of-state purchases."  Direct Marketing, 135 S. Ct. at 1134 (Kennedy, J., concurring).

levy, or collection of taxes and concluded that gathering information related to taxes was a procedure that preceded assessment, levy, and collection of taxes.  Id. at 1129-30.  The Court rejected the lower court's broad interpretation of the TIA as barring all acts that inhibit taxation.  Id. at 1132-33.  The Court held that, as a result, Colorado's law requiring notice and reporting of tax information did not implicate the TIA.  Id. at 1133.

Here, however, Kane sought an order that would remove the town's employees and officers who assess, collect, and levy taxes for the town.  Such an order would "restrict or stop official action" of tax assessment, collection, and levy, at least until new employees and officers could replace those who were removed.  See Direct Marketing, 135 S. Ct. at 1132. Therefore, because of the relief requested, Kane's claims are barred by the TIA.

B.  Civil Rights Claims

As explained in the court's order granting defendants' motion to dismiss, even if the claims were not barred by the TIA, they would be dismissed for failure to state cognizable civil rights claims.  Kane's claims are that defendants failed to respond to his tax protests and letters in a manner that he

found acceptable.  He did not identify any constitutional right to receive particular responses from the town or its officers.

The circumstances that Kane describes do not violate the Fourteenth Amendment's procedural or substantive due process requirements.  To state a due process claim, a plaintiff generally must assert facts showing that he has suffered a deprivation of a protected interest in life, liberty, or property.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541-42 (1985) (elements of procedural due process); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (same); Cty. of Sacramento v. Lewis, 523 U.S. 833, 845-47 (1998) (elements of substantive due process); Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (noting that action does not infringe substantive due process unless it deprives an individual of a protected interest).  Kane does not allege such a deprivation in his amended complaint.

Nor has Kane alleged facts to support an equal protection claim.  To establish an equal protection claim, a plaintiff generally must demonstrate that, (1) compared with others similarly situated, he was selectively treated, and (2) that the selective treatment was motivated by purposeful discrimination on some improper basis, such as plaintiff's membership in a particular race or religion.  See Macone v. Town of Wakefield,

277 F.3d 1, 10 (1st Cir. 2002).  Although Kane states that he was not treated as nicely as others who objected to their property taxes, he provides no specific factual support for that conclusion and alleges no facts to show that he was treated differently from others, who were similarly situated, based on race or another impermissible reason.  See Lopera v. Town of Coventry, 640 F.3d 388, 402 (1st Cir. 2011).  Kane also does not allege facts to support an equal protection claim based on a "class of one."  See Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 602-09 (2008).

Kane claims that defendants violated his right to free speech under the First Amendment and retaliated against him for exercising his First Amendment right.  Kane alleges that defendants did not like him because of his tax protests and inflicted emotional distress on him by their responses and lack of response to his tax protests and letters.  He provides no facts, however, that suggest defendants took any action against him in reprisal for his tax protests which inhibited his free expression.  Instead, Kane alleges that despite the responses he received, or the lack of response, he continued to challenge the town's property taxes as unconstitutional and continued to assert that his home is a "household utensil" that is not subject to property tax and that property taxes are fraudulent

10

and constitute extortion fees.  In the absence of any inhibition
or chilling effect on Kane's right to free speech, he has not
alleged a First Amendment violation.  See United States v.
Alvarez, 132 S. Ct. 2537, 2543-51 (2012) (discussing generally
First Amendment speech protection); Mattei v. Dunbar, --- F.
Supp. 3d. ---, 2016 WL 6634871, at *3-*4 (D. Mass. Nov. 8,
2016).

Kane provides no grounds for reconsideration of the court's
order that granted defendants' motion to dismiss.

### Conclusion

For the foregoing reasons, plaintiff's motion for
reconsideration (doc. no. 68) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 21, 2017

cc:  Michael Kane, pro se
     Michael P. Courtney, Esq.
     Russell F. Hilliard, Esq.